UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

|  |  |
|---|---|
| ROGER D. SMITH, MARCUS P. MCKINLEY, WILLIAM R. JOHNSON, SANDRA RUSH, and JUDY RIGGS, on behalf of themselves and all others similarly situated,<br><br>           Plaintiffs,<br><br>     v.<br><br>ARAMARK CORPORATION, ARAMARK CORRECTIONAL SERVICES, LLC, and UNION SUPPLY GROUP,<br><br>           Defendants. | Civil Action No. 2:25-cv-00710<br>District Judge: Thomas E. Johnston<br>Magistrate Judge: Dwane L. Tinsley |

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................. 1

II. ALLEGATIONS OF THE COMPLAINT ........................................................... 2

    A.  West Virginia Contracts with Aramark to Provide Food Services in State Correctional Facilities. ............................................................................. 2

    B.  Plaintiffs Allege that They Receive Inadequate Free Food at Mt. Olive. ............... 3

    C.  Plaintiffs Allege that They Are "Extorted" to Buy Additional Food From Aramark. ................................................................................................... 6

    D.  Plaintiffs' Proposed Classes and Claims. ................................................ 6

III. LEGAL STANDARD ......................................................................................... 7

IV. ARGUMENT ...................................................................................................... 8

    A.  Plaintiffs Fail to State Any Claims. ........................................................ 8

        1.  Plaintiffs' Attempt to State a Disguised Breach of Contract Claim Fails. ............................................................................................. 9

        2.  Plaintiffs Have Not Stated a Claim Under the West Virginia Consumer Credit and Protection Act. ............................................... 11

        3.  Plaintiffs Have Not Stated a Claim for Economic Duress. ........... 15

        4.  Plaintiffs Have Not Stated a Claim for Unjust Enrichment. .......... 15

    B.  Plaintiff Johnson Lacks Article III Standing to Seek Injunctive and Declaratory Relief. .................................................................................... 16

    C.  Incarcerated Plaintiffs Have Not Adequately Alleged They Exhausted Their Administrative Remedies. ............................................................... 17

V.  CONCLUSION ................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. Pastides*,
   900 F.3d 160 (4th Cir. 2018) ..................................................................................7

*Anderson v. S. Health Partners, Inc.*,
   2020 WL 6326098 (E.D.N.C. Oct. 28, 2020)..........................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................7, 8, 14

*Barnett v. Ziegler*,
   2011 WL 4382379 (S.D.W. Va. Sep. 20, 2011) .................................................16, 17

*Bragg v. WV Dep't of Corr. & Rehab.*,
   2023 WL 2979028 (S.D.W. Va. Mar. 20, 2023) ................................................17, 18

*Chapman v. TD Bank N.A.*,
   2025 WL 1287995 (S.D.W. Va. May 2, 2025).......................................................11

*Cozzarelli v. Inspire Pharms. Inc.*,
   549 F.3d 618 (4th Cir. 2008) ................................................................................19

*Custis v. Davis*,
   851 F.3d. 358 (4th Cir. 2017) ...............................................................................17

*E. Steel Constructors, Inc. v. City of Salem*,
   549 S.E.2d 266 (W. Va. 2001)...............................................................................10

*Ellibee v. Aramark Corr. Servs., Inc.*,
   154 P.3d 39 (Kan. Ct. App. 2007) .........................................................................12

*Farmer v. Brennan*,
   511 U.S. 825 (1994).................................................................................................2

*Fredeking v. JPMorgan Chase Bank, N.A.*,
   2019 WL 691404 (S.D.W. Va. Feb. 19, 2019) .......................................................10

*Goines v. Valley Cmty. Servs. Bd.*,
   822 F.3d 159 (4th Cir. 2016) ..................................................................................4

*Holmes v. Runyan & Assoc., Inc.*,
   2009 WL 5063305 (S.D.W. Va. Dec. 15, 2009)....................................................15

*Incumaa v. Ozmint*,
   507 F.3d 281 (4th Cir. 2007) ........................................................................17

*Integrity Coal Sales, Inc. v. Avani Res. PTE, Ltd.*,
   2025 WL 2446298 (S.D.W. Va. Aug. 25, 2025) ...........................................16

*Lewis v. Cont'l Bank Corp.*,
   494 U.S. 472 (1990)......................................................................................16

*Lewis v. W. Reg'l Jail*,
   2012 WL 3670393 (S.D.W. Va. July 24, 2012) .............................................8

*Lowe v. Johnson*,
   2018 WL 4222829 (S.D.W. Va. Aug. 13, 2018) ...........................................18

*Panetta v. Chesapeake Energy Corp.*,
   2010 WL 1930160 (S.D.W. Va. May 12, 2010)..............................................15

*Reid v. Unilever U.S., Inc.*,
   964 F. Supp. 2d 893 (N.D. Ill. 2013) ..............................................................9

*Rendelman v. Rouse*,
   569 F.3d 182 (4th Cir. 2009) ........................................................................16

*S.B. v. Wilson*,
   2021 WL 4494195 (S.D.W. Va. Sep. 30, 2021) ...........................................10

*Sand v. Milwaukee Cnty. House of Corr.*,
   2022 WL 912283 (E.D. Wis. Mar. 29, 2022) ...............................................12

*Sisney v. South Dakota*,
   754 N.W.2d 639 (S.D. 2008) ........................................................................10

*Thompson v. W. Virginia Reg'l Jail/Corr. Auth.*,
   2013 WL 3282931 (S.D.W. Va. June 27, 2013)............................................17

*Tovar v. Marshall*,
   2024 WL 3553849 (S.D.W. Va. July 25, 2024) ............................................16

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021)........................................................................................7

*Wasanyi v. Aramark Servs., Inc.*,
   2024 WL 4472357 (S.D.W. Va. July 2, 2024) ..............................................18

*Williams v. Berge*,
   102 F. App'x 506 (7th Cir.2004) ....................................................................8

*Wilson v. Seiter*,
    501 U.S. 294 (1991) ................................................................................................8

*Wood v. Hunt*,
    2018 WL 3969952 (W.D. Va. Aug. 20, 2018) ........................................................8

*Woodard v. Victory Recs., Inc.*,
    2016 WL 1270423 (N.D. Ill. Mar. 31, 2016) ........................................................10

**Statutes**

W. Va. Code § 19-37-1 .....................................................................................................3

W. Va. Code § 25-1A-2 ...................................................................................................17

W. Va. Code § 46A-5-108 ...............................................................................................11

W. Va. Code § 46A-6-101 ...............................................................................................11

W. Va. Code § 46A-6-102 ...............................................................................................12

W. Va. Code § 46A-6-104 ...............................................................................................11

W. Va. Code § 55-8-12 ....................................................................................................10

## I.    INTRODUCTION

Plaintiffs in this case are inmates at Mt. Olive Correctional Complex (and friends or family members of inmates) who are dissatisfied with the free food they receive in prison.  That food is provided by Defendants Aramark Corporation, Aramark Correctional Services, LLC, and Union Supply Group (collectively, "Aramark") pursuant to specifications and requirements set by the State of West Virgina, with whom Aramark contracts to provide food services at Mt. Olive. Plaintiffs assert a variety of complaints about the quality, quantity, and variety of free food they receive, including that Aramark uses canned vegetables and processed meat instead of fresh vegetables and ground beef, ended "free-flow salad bar services," serves inmates leftovers, and provides "bland" and "tasteless" food.  Presumably because these alleged complaints could never suffice to state a Section 1983 claim challenging their conditions of confinement, Plaintiffs try a different tactic: they allege that the free food provided by Aramark is sufficiently inadequate that they are deprived of their "basic needs" and coerced into purchasing additional food from Aramark for money.  They challenge this alleged "scheme" primarily under the West Virginia Consumer Credit and Protection Act ("WVCCPA").  In the end, however, Plaintiffs' attempt to dress their complaints about prison food as a consumer protection claim fails for multiple reasons.

*First*, Plaintiffs' core allegation is that Aramark is not delivering the quality and quantity of food that is required by its contract with West Virginia.  Plaintiffs repeatedly allege the terms of that contract and claim that if Aramark honored those terms, they would have no case.  What Plaintiffs really want, in short, is for Aramark to honor commitments to West Virginia that it has allegedly breached.  But Plaintiffs are not parties to that contract and do not claim to be third-party beneficiaries of it.  Presumably for that reason, they have disguised what is essentially a claim for breach of contract that they would not have standing to bring as a consumer protection claim.  As courts have elsewhere, this Court should reject that sleight of hand.

1

*Second*, Plaintiffs have failed to state any claims. Plaintiffs' attempt to invoke the WVCCPA fails because the alleged "scheme" they are challenging is not cognizable under that consumer protection statute. In addition, Plaintiffs have failed to plausibly allege an essential element of the alleged "scheme": that Aramark limits the quality and quantity of free food that Plaintiffs receive to such an extreme degree that they are coerced into purchasing food. The few allegations of the Complaint that are specific to food service at Mt. Olive show that inmates receive three square meals a day. Even if the Court credits the named Plaintiffs' complaints about the food they personally received, those complaints—chiefly that Aramark does not use as much fresh vegetables and beef as they would prefer—hardly establish a deprivation of "basic needs" so profound that Plaintiffs were forced to purchase food against their will.

For these and the additional reasons discussed below, the Court should dismiss Plaintiffs' Complaint.

## II.    ALLEGATIONS OF THE COMPLAINT

### A.    West Virginia Contracts with Aramark to Provide Food Services in State Correctional Facilities.

The State of West Virginia is responsible for the well-being of individuals incarcerated in the State's prisons. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Like many other states, West Virginia contracts with vendors to meet the State's responsibility. Plaintiffs allege that from "2019 to the present, Aramark has had a contract with the State to provide food services to people incarcerated in West Virginia." Compl. ¶ 52. In 2022, Aramark acquired Union Supply and allegedly "gained exclusive control over food provisions in certain facilities, including at Mt. Olive in West Virginia." *See id.* ¶¶ 2, 5, 29–30.

West Virginia, not Aramark, establishes "the quality of food that should be available to incarcerated people" in the State. *Id.* ¶ 55. For example, West Virginia law requires county

commissions to provide "wholesome and sufficient food" to prisoners. *Id.* ¶ 56. Pursuant to the Fresh Food Act of 2019, which provides that "[l]ocally grown food is healthier and more beneficial to the environment," W. Va. Code § 19-37-1(b), all state-funded institutions (including correctional facilities) must "obtain a minimum of five percent of [their] food from in-state producers," *id.* § 19-37-2(a), unless an exception or exemption applies, *id.* § 19-37-2(d). *See* Compl. ¶ 56. In accord with these requirements, the State's contract with Aramark "contain[s] detailed and objective criteria governing its daily meals service." *Id.* ¶ 5. "[T]he State sets specific goals and objectives with which Aramark agreed to comply, including with respect to the quality, quantity, and variety of food required for Aramark's daily meals services." *Id.* ¶ 53.

In addition to "the mandated free daily meals services to people incarcerated in correctional facilities in West Virginia under its contract with the State, which the State pays for," Aramark also provides "food-for-purchase" programs. *Id.* ¶ 2. These programs include "Aramark's commissary, which "is a retail store in which incarcerated consumers can purchase food and drinks, among other items." *Id.* ¶ 33. It also includes the "Fresh Favorites" program, "where incarcerated consumers can buy 'special meals' using their own money." *Id.* ¶ 34. Finally, "[f]amily members and loved ones of incarcerated people can purchase food for them through Aramark's 'iCare' product, which provides 'fresh meals' to people who are incarcerated." *Id.* 35.

### B.    Plaintiffs Allege that They Receive Inadequate Free Food at Mt. Olive.

Plaintiffs Roger Smith and Marcus McKinley are currently incarcerated in the Mt. Olive Correctional Complex in Mount Olive, West Virginia ("Mt. Olive"). *Id.* ¶¶ 8–9. Plaintiff William Johnson was formerly incarcerated in Mt. Olive. *Id.* ¶ 10. Plaintiff Sandra Rush has a son who is currently incarcerated at Mt. Olive, *id.* ¶ 11, and Plaintiff Judy Riggs has a brother who was incarcerated at Mt. Olive until he passed away, as well as a loved one who is currently incarcerated

3

at Mt. Olive, *id.* ¶ 12.  Each of these Plaintiffs allegedly purchased food through one or more of Aramark's food-for-purchase programs at Mt. Olive.  *Id.* ¶¶ 64–109.

Plaintiffs allege that Aramark has "fail[ed] to meet the comprehensive and specific contractual requirements set forth in its contract with West Virginia."  *Id.* ¶ 51; *see also id.* ¶ 3 (alleging Aramark "fail[s] to provide incarcerated people with adequate, free daily meals services").  Specifically, Plaintiffs allege that "Aramark provides inadequate daily meals services by providing inadequate quantities of food, inappropriately reusing left over and spoiled food, and failing to serve required amounts and varieties of fresh foods such as vegetables, unprocessed meats, and dairy."  *Id.* ¶ 39.

To support these allegations as to the quality and quantity of prison food, Plaintiffs principally rely on assertions about Aramark's and other contractors' practices taken from a 2023 report by the advocacy group West Virginia Center on Budget & Policy.  *See id.* ¶ 41.[1]  This report includes only two specific references to Mt. Olive.  First, as reproduced below, there is a screenshot from a 2022 menu at Mt. Olive listing "three daily meals to be served over a five-week period"— over a third of which included a "salad option"—and which included "biscuits and gravy," "hamburgers," "hot dogs, 'Frito pie,' sloppy joes, and 'meaty noodles.'"  Lannin Decl. Ex. A, at 3.

---

[1] *See* Lannin Decl. Ex. A (Teri Castle & Sara Whitaker, W. Va. Ctr. On Budget & Pol'y, *The High Costs of Cheap Food: Eating in West Virginia Prisons*, at 8 (Sept. 2023), https://wvpolicy.org/wp-content/uploads/2023/09/The-High-Cost-of-Prison-Food.pdf (cited in Compl. ¶ 41 & n.11)).  The Court may consider this report at the pleading stage because it is explicitly incorporated by reference into the Complaint.  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (A court can "consider documents that are explicitly incorporated into the complaint by reference, and those attached to the complaint as exhibits").

| | | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 |
|---|---|---|---|---|---|---|
| **Mon** | B-Fast | French Toast-Oatmeal-Pork Patty | French Toast-Oatmeal-Pork Patty | French Toast-Oatmeal-Pork Patty | French Toast-Oatmeal-Pork Patty | French Toast-Oatmeal-Pork Patty |
| | Lunch | Meaty Noodles-V1-B1-D1 | Grilled Ham & Chs S1-V1-S2-D3 | Roast Beef M1-P2-V5-B1-D3 | Sloppy Joe B2-S6-D1 | Taco C3-V7-D3 |
| | Dinner | CountryPatty M1-P2-V2-B1-D3 | Fish V5-B1-S1-D6 | Hearty Span Rice V2-V7-B3-D6 | Ham P3-V8-S1-B1-D6 | Turkey Salad-S4-S1-B1-D1 |
| **Tue** | B-Fast | Eggs/Ham,Peppers&Onions,Grits | Eggs/Ham,Peppers&Onions,Grits | Eggs/Ham,Peppers&Onions,Grits | Eggs/Ham,Peppers&Onions, Grits | Eggs/Ham,Peppers&Onions,Grits |
| | Lunch | Chicken Patty B1-C1-M2-V8-D6 | Chicken Patty M1-M2-V8-D8 | Fish M4-V9-B1-D5 | Turkey -V1-C2/C3-S1-B1-D2 | Grilled Bologna w/Chs C3-B1-P8-D5 |
| | Dinner | Ham V1-V4-B1-D7 | HeartySpanishRice V4-S1-B3-D7 | BBQ Roast Beef P6-S2-B2-D7 | Chicken Thighs M1-M3-V5-S1-B3-D5 | BBQ Patty M2-S1-B1-D3 |
| **Wed** | B-Fast | Gravy & Biscuits – M7 | Gravy & Biscuits – M7 | Gravy & Biscuits – M7 | Gravy & Biscuits – M7 | Gravy & Biscuits-M7 |
| | Lunch | Hamburger C3-B2-C4-P1-D3 | Hamburger B2-C3-C4-P6-D3 | Hamburger C3-C4-P1-D6 | Hamburger C3-C4-P6-D6 | Hamburger B2-C2/C3/C4/P1-D3 |
| | Dinner | Cheesy Chicken Broccoli Rice V5-S1-B1-D6 | Chili M3-V10-B3-D6 | Char Patty M2-V8-S1-D3 | Chili P5-V2-C5-C6-S1-D7 | Country Beef Patty M1-P2-V2-D6-B1 |
| **Thu** | B-Fast | Scrambled Eggs-Farina-D9 | Eggs-Farina-D9 | Eggs-Farina-P9-D9 | Eggs-Farina-D9 | Eggs-Farina-D9 |
| | Lunch | Roast Beef B1-P2-M1-D3 | Sloppy Joe B2-P5-S1-D3 | Peppered Fajita Meat V1-M9-D5 | Chicken Patty M1-M2-B1-D3 | Chicken Patty M1-M2-B1-D5 |
| | Dinner | Char Patty M2-V2-S1-D5 | Chicken Thighs M4-S1-B3-D6 | Cheesy Chicken Broccoli Rice V9-S2-B3-D3 | Meatballs M1-V1-V10-D6 | Spaghetti V8-S1-B1-D6 |
| **Fri** | B-Fast | Pancakes-Oatmeal-Sausage | Pancakes-Oatmeal-Sausage | Pancakes-Oatmeal-Sausage | Pancakes-Oatmeal-Sausage | Pancakes-Oatmeal-Sausage |
| | Lunch | Fish B1-M4-V1-D3 | Frito Pie V1-M6-B3-D5 | Chicken Patty-B1-C1-S3-D3 | Fish V11-B1-D4 | Frito Pie V1-M6-B3-D4 |
| | Dinner | Hamburger C3-B2-C4-P8-D6 | Hamburger B2-P1-D3-C3-C4 | Hamburger C2/C3-P8-D6 | Hamburger C2/C3-P1-D6 | Hamburger B2-C3-C4-P8-D3 |
| **Sat** | B-Fast | Eggs w/ Ham-Grits | Eggs w/Ham-Grits | Eggs w/Ham-Grits | Eggs w/Ham – Grits | Eggs w/Ham-Grits |
| | Lunch | BBQ Turkey B1-P4-S2-D3 | BBQ Patty M2-V5-B1-D4 | Turkey Salad C2-B1-P7-D3 | Country Beef Patty M1-P6-B1-D3 | BBQ Turkey B1-S3-V3-D2 |
| | Dinner | Chicken Thighs P2-M1-V8/V9-B3-D6 | Turkey M8-M1-V8/V5-B3-D6 | Pasta V8-S1-B1-D6 | Spaghetti V2-S1-B1-D5 | Fish M3-V2-B3-D3 |
| **Sun** | B-Fast | Gravy & Biscuits-M7-P9 | Gravy & Biscuits-M7- P9 | Gravy & Biscuits-M7-P9 | Gravy & Biscuits-M7-P9 | Gravy & Biscuits-M7-P9 |
| | Lunch | Salisbury Steak M1-M3-B1-D4 | Taco C3-V7-D3 | Taco C3-M3-D3 | BBQ Patty M3-V10-B1-D10 | Hot Dogs M5-D5 |
| | Dinner | Turkey Tetrazzini V9-V10-B3-D5 | Country Beef Patty P2-M1-S1-B1-D1 | Hot Dogs M5-S2-D3 | Turkey/Dress P2-M1-V8-B1-D3 | Meatballs M2-S1-B1-D3 |

| Soup | Bread | Condiments | Deserts | Misc. | Potatoes | Salads | Vegetables |
|---|---|---|---|---|---|---|---|
| 11/01/21 | B1-Bread/Roll | C1-Mayo | D1-Lemon Square | M1-Gravy | P1-French Fries | S1-Salad | V1-Pinto Beans |
| Thru | B2-Hamburger Bun | C2-Let & Tomato | D2-Bread Pudding | M2-Noodles | P2-Mashed Potatoes | S2-Coleslaw | V2-Irish Blend |
| 03/31/22 | B3-Combread | C3-Cheese | D3-Cookie | M3-Rice | P3-Scalloped Potatoes | S3-Macaroni Salad | V3-Corn |
| | | C4-Tomato & Onion | D4-Blueberry Oat Bar | M4-Mac & Cheese | P4-Au-gratin Potatoes | S4-Potato Salad | V4-Mixed Veg. |
| NOTES: | | C5-Sour Cream | D5-Brownie | M5-Coney Sauce | P5-Baked Potatoes | S5-Carrot Salad | V5-Green Beans |
| Highlighted | | C6-Cheese Sauce | D6-Cake | M6-Spanish Rice | P6-Cottage Fries | S6-Pasta Salad | V6-Broccoli |
| * | | | D7-Apple Spice Bar | M7-Bran Flakes | P7-Cajun Potatoes | | V7-Re-fried Beans |
| French Fries | | | D8-Cinnamon Cake | M8-Yellow Rice | P8-Oven Striped Potatoes | | V8-Carrots |
| | | | D9-Muffins | M9-Peppers & Onions | P9-Hash Brown Potatoes | | V9-Peas |
| | | | D10-Banana Cake | | | | V10-Cabbage |
| | | | Menu Effective April 1, 2022 | | | | V11-Baked Beans |

**Source:** Dining menu for Mt. Olive Correctional Center, effective April 1, 2022.

Second, the report claims that one inmate at Mt. Olive "observed that his prison had 'a lot of diabetics, because most of what the kitchen feeds us is pasta and rice.'" *Id.* at 8.

Plaintiffs also allege that "[n]umerous stories from incarcerated consumers, including the named Plaintiffs, set forth in grievances and letters" support their claims. Compl. ¶ 42. None of these "grievances and letters," including their content, are alleged in the Complaint. The named Plaintiffs do allege various cursory complaints about the free food they received at Mt. Olive, including (for example) that "the vegetables provided were canned items such as carrots, green

5

beans, and corn or otherwise so poorly prepared they lost flavor and were mushy, like overcooked broccoli stems," *id.* ¶ 89, "fresh ground beef" has been replaced with "turkey pellets that do not have the consistency of fresh meat," *id.* ¶ 69, "eggs are bagged eggs," *id.* ¶ 79, and "[Plaintiff] McKinley and others are often not full after eating their meals," *id.* ¶ 80. Plaintiff Rush's incarcerated son allegedly complained that the free food "is bland, tasteless, and contains no fresh vegetables." *Id.* ¶ 95.

Finally, Plaintiffs level allegations about the food service at facilities in West Virginia other than Mt. Olive, *see id.* ¶¶ 43–44, and at prison facilities outside of West Virginia, *see id.* ¶¶ 45–50.

**C.    Plaintiffs Allege that They Are "Extorted" to Buy Additional Food From Aramark.**

Plaintiffs allege that Aramark is engaged in a "scheme" to "extort[] profits from incarcerated consumers and their loved ones by failing to provide incarcerated people with adequate, free daily meals services, so they are driven to purchase commissary food, meals from Aramark's Fresh Favorites program, or iCare packages." *Id.* ¶ 3. The "scheme," they allege, "forces class members to purchase food from Aramark in order to meet their own and their loved ones' basic needs." *Id.* ¶ 144. According to Plaintiffs, "[i]f Aramark honored its contractually mandated daily meals services obligations, incarcerated consumers and their family members and loved ones would spend less money on food purchases and have more money to spend on other essentials such as communicating with family members, toiletries, clothing, educational opportunities, and preparing for release." *Id.* ¶ 38.

**D.    Plaintiffs' Proposed Classes and Claims.**

Plaintiffs seek to represent a putative class of "all people who purchased food products from commissary, Fresh Favorites, and/or iCare for themselves or loved ones who have been

incarcerated at Mount Olive Correctional Complex after Aramark Corporation acquired Union Supply." *Id.* ¶ 111. Plaintiffs also seek to represent three putative subclasses: "(1) people who were formerly incarcerated at Mt. Olive (the 'formerly incarcerated at Mt. Olive consumer' subclass), (2) people who are currently incarcerated at Mt. Olive (the 'currently incarcerated consumer' subclass), and (3) people who have used iCare or commissary to send food to loved ones incarcerated at Mt. Olive (the 'loved ones consumer' subclass)." *Id.*

Plaintiffs assert three causes of action against Aramark. First, Plaintiffs allege that Aramark violates the State's consumer protection statute, the West Virginia Consumer Credit and Protection Act ("WVCCPA"), by allegedly engaging in "unfair acts or practices in the conduct of any trade or commerce." *Id.* ¶¶ 128–41. Second, Plaintiffs bring a claim for common law economic duress because Aramark allegedly "forces class members to purchase food from Aramark in order to meet their own and their loved ones' basic needs." *Id.* ¶¶ 142–48. Third, Plaintiffs bring a claim for unjust enrichment, alleging that Aramark has been unjustly enriched by its "unfair food services scheme." *Id.* ¶¶ 149–54. Plaintiffs seek declaratory and injunctive relief, disgorgement, restitution, and the greater of either actual or statutory damages. *See id.* at 31–32.

## III.   LEGAL STANDARD

"[P]laintiffs must demonstrate [Article III] standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). When a plaintiff lacks Article III standing, the plaintiff's claims must be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction. *See Abbott v. Pastides*, 900 F.3d 160, 175 n.8 (4th Cir. 2018) ("[A] lack of subject-matter jurisdiction will lead to dismissal under Rule 12(b)(1) . . . .").

A complaint must also "state[] a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Mere "unadorned,

the-defendant-unlawfully-harmed-me accusation[s]" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough. *Id.* at 678. Instead, a plaintiff must allege "sufficient factual matter" that, taken as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## IV.    ARGUMENT

### A.    Plaintiffs Fail to State Any Claims.

Plaintiffs' choice of claims is telling. They conspicuously decline to challenge the free food they are provided under Section 1983—a claim that would require alleging a deprivation "denying the minimal civilized measure of life's necessities." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see also Lewis v. W. Reg'l Jail*, 2012 WL 3670393, at *11 (S.D.W. Va. July 24, 2012), *report and recommendation adopted*, 2012 WL 3726874 (S.D.W. Va. Aug. 27, 2012) (constitutional claims challenging inadequate prison food must establish "a serious or significant physical or emotional injury resulting from the challenged conditions" or "a substantial risk of harm"). Presumably because Plaintiffs recognize they cannot meet that standard, they attempt to circumvent it altogether by shoehorning their complaints about Aramark's food into an alleged consumer protection problem.[2] The Court should reject this unprecedented approach, which would eviscerate Section 1983 and provide a roadmap to other prisoners seeking to challenge their conditions of confinement under less demanding standards.

---

[2] Courts routinely reject Section 1983 claims based on the same type of prison food complaints alleged here. *See, e.g.*, *Lewis*, 2012 WL 3670393, at *11 (complaints that "inmates are not served any fruit, the beverages provided to inmates are 'watered down' and have no nutritional value, and that vegetables are rarely cooked" do not "indicate[] a deprivation of life's basic necessities"); *Wood v. Hunt*, 2018 WL 3969952, at *1 (W.D. Va. Aug. 20, 2018) (dismissing prisoner complaint that menus had too many "processed meats, refined grains, [and] added sugars" and not enough "vegetables, fruits, and protein foods," and observing many of the allegedly unhealthy foods are "sold in public grocery stores and served in restaurants"); *Williams v. Berge*, 102 F. App'x 506, 507 (7th Cir.2004) ("Prisoners have a right to adequate food, but not to food that is tasty or even appetizing[.]").

### 1.    Plaintiffs' Attempt to State a Disguised Breach of Contract Claim Fails.

At its heart, the basis of Plaintiffs' complaint is that Aramark allegedly failed to deliver the quality and quantity of free food that was required by its contract with West Virginia. The Complaint is replete with allegations about that contract and Aramark's alleged failure to perform. For example, Plaintiffs allege the existence and terms of that contract, including the "specific goals and objectives with which Aramark agreed to comply, including with respect to the quality, quantity, and variety of food required for Aramark's daily meals services." Compl. ¶ 53. And Plaintiffs repeatedly allege that Aramark has breached that contract by supplying prison food that supposedly does not meet those requirements. *See, e.g.*, *id.* ¶ 51 ("Aramark's daily meals services are objectively inadequate because they fail to meet the comprehensive and specific contractual requirements set forth in its contract with West Virginia."). Finally, Plaintiffs outright concede that this is a breach of contract case, acknowledging that: "If Aramark honored its contractually mandated daily meals services obligations, incarcerated consumers and their family members and loved ones would spend less money on food purchases." *Id.* ¶ 38.

As Plaintiffs themselves admit, this is, at most, a contract dispute—not a consumer protection case. Their allegations turn entirely on whether Aramark is complying with the terms of its contract with West Virginia. *West Virgina* would be the proper party to bring any such dispute, and it conspicuously has not. Plaintiffs, conversely, are not parties to that contract and have no standing to enforce it. It is presumably for this reason that Plaintiffs are attempting to disguise a breach of contract case as a consumer protection one. Courts have rejected this feint in similar contexts, and this Court should do the same and dismiss Plaintiffs' claims for failure to state a claim. *See, e.g.*, *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 913 (N.D. Ill. 2013) (noting that the Illinois consumer protection statute "should not apply to simple breach of contract claims" and "to set forth an action under a consumer protection law, a party must allege unfair or

9

deceptive conduct that is distinct from a simple breach of contract," because "were it otherwise, a plaintiff could convert any suit for breach of contract into a consumer fraud action, as all breach of contract actions involve a promise and a subsequent failure to perform" (cleaned up)); *Woodard v. Victory Recs., Inc.*, 2016 WL 1270423, at *8 (N.D. Ill. Mar. 31, 2016) (observing that neither Tennessee nor Illinois' consumer protection laws were intended to apply "to every contract dispute or to supplement every breach of contract claim with a redundant remedy").

Even if Plaintiffs had asserted a breach of contract claim against Aramark—which they did not—such a claim would fail because they are not parties to the contract and have not alleged they are third-party beneficiaries to it. *Fredeking v. JPMorgan Chase Bank, N.A.*, 2019 WL 691404, at *4 (S.D.W. Va. Feb. 19, 2019) ("As a general rule, only parties to a contract and intended third-party beneficiaries may enforce an agreement's provisions."). Doing so would require showing that the contract between Aramark and West Virginia was made for their "sole benefit." W. Va. Code § 55-8-12; *see also E. Steel Constructors, Inc. v. City of Salem*, 549 S.E.2d 266, 277 (W. Va. 2001) (noting that West Virginia courts have "consistently given force to the 'sole benefit' requirement"). "Third-party beneficiary status is exceptional in the law and should not be granted liberally," and it is particularly difficult to claim third-party beneficiary status to government contracts. *S.B. v. Wilson*, 2021 WL 4494195, at *5 (S.D.W. Va. Sep. 30, 2021). Courts regularly reject such attempts by prisoners to bring claims for breach of a contract between a state and its contractor on the grounds that the prisoners are third-party beneficiaries merely because a state contract benefits prisoners. *See, e.g.*, *Anderson v. S. Health Partners, Inc.*, 2020 WL 6326098, at *5 (E.D.N.C. Oct. 28, 2020) (allegation that state's contract with independent contractor to provide medical services to prisoner did not establish prisoner was a third-party beneficiary); *Sisney v. South Dakota*, 754 N.W.2d 639, 643–45 (S.D. 2008) (because "public contracts are intended to

10

benefit everyone," prisoner's benefits from food service contract with the state were merely incidental).

### 2. Plaintiffs Have Not Stated a Claim Under the West Virginia Consumer Credit and Protection Act.

The WVCCPA is meant to "protect consumers from unfair, illegal, and deceptive acts or practices." *Chapman v. TD Bank N.A.*, 2025 WL 1287995, at *2 (S.D.W. Va. May 2, 2025) (citation omitted).  At the same time, it is "the intent of the Legislature that [it] not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest[.]" W. Va. Code § 46A-6-101(2). Plaintiffs' attempt to shoehorn their theory of liability into a consumer protection statute fails for multiple independent reasons.

*First*, Plaintiffs cannot assert a claim under the WVCCPA because their claim is necessarily based on Aramark's provision of *free* food.  The WVCCPA prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any *trade or commerce*." W. Va. Code § 46A-6-104 (emphasis added).[3]  "Trade or commerce" refers to "the advertising, offering for *sale*, *sale* or distribution of any goods or services."  *Id.* § 46A-6-102(6) (emphasis added).  However, the predicate conduct underlying Plaintiffs' theory of liability is Aramark's provision of food to Plaintiffs that, while allegedly insufficient, was also indisputably *free*.  *See, e.g.*, Compl. ¶¶ 2–4, 31.  Because there was no sale of this free food to the prisoners, Plaintiffs have not and cannot allege an unfair practice "in the conduct of any trade or commerce."  Indeed, courts have rejected similar consumer claims brought by incarcerated individuals against Aramark

---

[3] In addition, no action may be brought under the WVCCPA until 45 days after a consumer has informed a seller in writing and by certified mail of the alleged violation and the factual basis of the violation. *See* W. Va. 46A-5-108(a).  While Plaintiffs Johnson, Smith and McKinley provided pre-suit notice, Aramark is not aware of Plaintiffs Rush and Riggs providing notice as required by West Virginia Code § 46A-5-108(a).  Lannin Decl. ¶ 3.

for this very reason.  *See*, *e.g.*, *Sand v. Milwaukee Cnty. House of Corr.*, 2022 WL 912283, at *14 (E.D. Wis. Mar. 29, 2022) (dismissing prisoner's complaint about food supplied by Aramark because Aramark was not "engaged in trade or trade competition" within the meaning of Wisconsin's similar consumer protection statute); *Ellibee v. Aramark Corr. Servs., Inc.*, 154 P.3d 39, 41 (Kan. Ct. App. 2007) (dismissing prisoner's complaint about food supplied by Aramark where Kansas consumer protection statute requires a "disposition for value," and "[t]here [was] no evidence of any sale or trade, as the [Department of Corrections] is legally required to provide sustenance for all inmates").

Plaintiffs attempt to obscure this problem by focusing on the *second* part of the alleged "scheme," alleging in the Complaint that "Aramark is engaging in trade or commerce when it offers food for sale to incarcerated people and their loved ones."  Compl. ¶ 131.  But Plaintiffs cannot state a valid claim by carving their theory of liability in half.  Because their case is necessarily based on Aramark's provision of free food, they cannot assert a claim under the WVCCPA.

*Second*, Plaintiffs have not plausibly alleged that Aramark's conduct is an "unfair method[] of competition" or constitutes an "unfair or deceptive act[] or practice[]" within the meaning of the statute.  Plaintiffs acknowledge that the WVCCPA contains a "list of unfair or deceptive acts or practices," Compl. ¶ 132 (citing W. Va. Code § 46A-6-102(7)), but none of the sixteen listed practices apply here—underscoring that Aramark's conduct is not the sort of practice covered by the WVCCPA.  Aramark is not, for example, "[p]assing off goods or services as those of another," misrepresenting the geographic origin of its goods or services, or passing off secondhand goods as new.  W. Va. Code § 46A-6-102(7)(A), (D), & (F).  Nor can Plaintiffs allege that the WVCCPA's prohibition on "[r]epresenting that goods or services are of a particular standard, quality or grade,

12

or that goods are of a particular style or model if they are of another" applies, *id.* § 46A-6-102(7)(G), because Plaintiffs nowhere allege that Aramark made any misrepresentations to them. Plaintiffs concede that none of the sixteen categories apply here—instead, they invoke a nebulous standard (derived from the FTC Act) for an "unfair act," which they acknowledge is undefined in the statute itself. Compl. ¶ 133. Even if the Court were to apply this undefined "unfair act" standard, Plaintiffs have failed plausibly to allege an essential aspect of the supposedly "unfair" scheme: that Aramark "fail[ed] to provide adequate free daily meals services," *id.* ¶ 135, as explained below.

*Third*, even if Plaintiffs could shoehorn Aramark's alleged scheme into a WVCCPA claim—and they cannot—there is another fatal problem: they have failed to plead sufficient facts to make it plausible that Aramark "limit[s] the quantity, quality, and variety of food served in its daily meals service" at Mt. Olive to such a degree that Plaintiffs are forced to purchase food. Compl. at 11; *see also id.* ¶ 39 (alleging Aramark "provid[es] inadequate quantities of food, inappropriately reus[es] left over and spoiled food, and fail[s] to serve required amounts and varieties of fresh foods such as vegetables, unprocessed meats, and dairy"). Plaintiffs' failure to support these inflammatory allegations dooms their entire case, because the alleged inadequacy of Plaintiffs' *free* food is what supposedly "forces class members to purchase food from Aramark in order to meet their own and their loved ones' basic needs." *Id.* ¶ 144.

As discussed above (at 4–5), Plaintiffs' primary support for these allegations is a 2023 report from the West Virginia Center on Budget & Policy. *Id.* ¶ 41. The only statements from that report specific to Mt. Olive, however, are a reproduction of a weekly menu showing prisoners received three meals a day, over a third of which included a salad option; and an observation from one inmate that "most of what the kitchen feeds us is pasta and rice." Plaintiffs also level

13

allegations about the food service at *other* facilities in West Virginia besides Mt. Olive, *see id.* ¶¶ 43–44, as well as claims about Aramark's food service at prison facilities outside of West Virginia, *see id.* ¶¶ 45–50. None of these allegations, however, plausibly support a claim regarding the food service at *Mt. Olive*.

In a conspicuous attempt to suggest West Virginia also has concerns about the food at Mt. Olive, Plaintiffs allege that "[t]he Agriculture Commissioner complained in 2022 that Aramark failed to comply with the Fresh Food Act." *Id.* ¶ 57 (citing Castle & Whitaker, *supra*). In fact, the Commissioner's comment was about "the lack of compliance among *state agencies*" in general, *not* about Aramark. Ex. A at 13 (emphasis added). Aramark assumes that Plaintiffs' mischaracterization of this quote was inadvertent, but the important point is that there is no allegation *anywhere* in the Complaint that West Virginia has expressed concerns about the quality or quantity of food Aramark supplies at Mt. Olive.

That leaves Plaintiffs' allegation that "[n]umerous stories from incarcerated consumers, including the named Plaintiffs, set forth in grievances and letters" support their claims about the inadequacy of meals at Mt. Olive. Compl. ¶ 42. Plaintiffs do not cite or describe such grievances and letters or the "stories" they supposedly contain, however, and these allegations accordingly do not move the needle. And while each of the named Plaintiffs makes conclusory allegations as to the allegedly inadequate food they personally received, the Court is not required to credit self-serving and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" of this nature. *Iqbal*, 556 U.S. at 678.

Finally, even if the Court credited *all* of Plaintiffs' various allegations—that there was not enough variety, that canned or processed food was sometimes used in place of fresh food, that the food was "bland" and "tasteless," that inmates were served leftovers—it would still not be

14

plausible that Plaintiffs were "forced" to buy food from Aramark.  At best, Plaintiffs' allegations establish that they are dissatisfied with their food in prison.  That is a far cry from establishing the type of life-or-death deprivation of "basic needs" upon which Plaintiffs' theory depends.

### 3.    Plaintiffs Have Not Stated a Claim for Economic Duress.

Plaintiffs' claim for economic duress fails for the same reason their consumer protection claim fails: they have not plausibly alleged they were sufficiently deprived of free food such that they were coerced into purchasing food from Aramark.  Even if the Court finds such allegations to be plausible, however, they still are not enough to bring a freestanding claim for economic duress.

The elements of a claim for economic duress "are fairly broken down into three individual components: 1) plaintiff was forced into a transaction, 2) the compulsion was based on unlawful threats or wrongful, oppressive, unconscionable conduct by the defendant, and 3) plaintiff was left with no reasonable alternative but to acquiesce." *Holmes v. Runyan & Assoc., Inc.*, 2009 WL 5063305, at *3 (S.D.W. Va. Dec. 15, 2009).  Plaintiffs have not plausibly alleged any of these elements.  As discussed above, they have not adequately alleged that Aramark engaged in "wrongful, oppressive, unconscionable conduct," nor that they were plausibly "forced" into buying food from Aramark or had no reasonable alternative to doing so.  Indeed, presumably many inmates took the "reasonable alternative" of eating their free food and simply not buying food from Aramark.  Even if this was a hard choice for some, "hard choices standing alone do not constitute duress." *Panetta v. Chesapeake Energy Corp.*, 2010 WL 1930160, at *3 (S.D.W. Va. May 12, 2010) (rejecting argument that plaintiff signed agreement under economic duress).

### 4.    Plaintiffs Have Not Stated a Claim for Unjust Enrichment.

"To maintain a claim of unjust enrichment, the following elements must be proven: (1) a benefit conferred upon the defendant [by the plaintiff], (2) an appreciation or knowledge by the

15

defendant of such benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Integrity Coal Sales, Inc. v. Avani Res. PTE, Ltd.*, 2025 WL 2446298, at *7 (S.D.W. Va. Aug. 25, 2025). Plaintiffs cannot state such a claim for the same reasons as their other claims: because Plaintiffs have not plausibly alleged that they were coerced into purchasing food from Aramark, they cannot plead that it would be inequitable for Aramark to retain the money they allegedly spent.

## B.   Plaintiff Johnson Lacks Article III Standing to Seek Injunctive and Declaratory Relief.

Plaintiff Johnson is no longer incarcerated at Mt. Olive. Compl. ¶ 10. His request for injunctive and declaratory relief, *see id.* at 31, should accordingly be dismissed under Rule 12(b)(1) for lack of standing. As a federal court, this Court "may adjudicate only live cases or controversies." *Barnett v. Ziegler*, 2011 WL 4382379, at *2 (S.D.W. Va. Sep. 20, 2011) (citing *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)). Article III requires that "[t]o invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis*, 494 U.S. at 477. But injunctive and declaratory relief cannot redress any injury suffered by a Plaintiff who is no longer incarcerated at Mt. Olive or does not have a loved one incarcerated there.

"[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009); *see also Tovar v. Marshall*, 2024 WL 3553849, at *3 (S.D.W. Va. July 25, 2024) (noting this principle articulated in *Rendelman* is "well-established Fourth Circuit precedent"). Courts therefore regularly dismiss prisoner complaints for lack of standing if the prisoners are seeking injunctive or declaratory relief regarding facilities from which

16

they have been released. *See, e.g.*, *Barnett*, 2011 WL 4382379, at *2; *Thompson v. W. Virginia Reg'l Jail/Corr. Auth.*, 2013 WL 3282931, at *7 (S.D.W. Va. June 27, 2013). This is because "[o]nce an inmate is removed from the environment in which he is subject[ed] to the challenged policy or practice . . . he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007). Application of that straightforward principle here requires dismissal of Plaintiff Johnson's request for injunctive and declaratory relief.

C.     **Incarcerated Plaintiffs Have Not Adequately Alleged They Exhausted Their Administrative Remedies.**

The West Virginia Prison Litigation Reform Act ("WVPLRA") prohibits prisoners from bringing "a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted." W. Va. Code § 25-1A-2(c); *see also id.* § 25-1A-2(a) (noting the WVPLRA extends to grievances regarding prison life, including "complaints concerning food quality"). While failure to exhaust is an affirmative defense, a court is not precluded "from considering at the outset whether an inmate has exhausted administrative remedies." *Bragg v. WV Dep't of Corr. & Rehab.*, 2023 WL 2979028, at *3 (S.D.W. Va. Mar. 20, 2023), *report and recommendation adopted*, 2023 WL 2974484 (S.D.W. Va. Apr. 17, 2023). "A court may *sua sponte* dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies." *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017).

Here, Plaintiffs merely allege that "numerous individuals, including the incarcerated Plaintiffs, have filed formal grievances and lodged informal complaints about the inadequate food and expensive food-for-purchase programs." Compl. ¶ 5. But Plaintiffs do not allege any further information about these purported "grievances" and "informal complaints," including their content

17

and what became of them, raising serious questions as to whether these incarcerated Plaintiffs (Mr. Smith, Mr. McKinley, and Mr. Johnson) have exhausted their remedies. *See Bragg*, 2023 WL 2979028, at *4 (observing a remedy is considered exhausted only when "the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision" from the relevant authority). However, even assuming *arguendo* that each Plaintiff *had* exhausted his claims relating to "inadequate food and expensive food-for-purchase programs," Compl. ¶ 5, that would not satisfy the exhaustion requirement here because those grievances do not "address the subject matter of [the] claims" in this particular case. *Lowe v. Johnson*, 2018 WL 4222829, at *10 (S.D.W. Va. Aug. 13, 2018), *report and recommendation adopted*, 2018 WL 4212416 (S.D.W. Va. Sep. 4, 2018).

Unlike their purported grievances, the incarcerated Plaintiffs do not simply allege in this case that the free meals at Mt. Olive are inadequate or that Aramark's commissary programs are expensive. Rather, Plaintiffs here connect these threads by alleging that Aramark engaged in a "scheme" to "extort[] profits from incarcerated consumers and their loved ones by failing to provide incarcerated people with adequate, free daily meals services, so they are driven to purchase commissary food, meals from Aramark's Fresh Favorites program, or iCare packages." Compl. ¶ 3. This material difference between Plaintiffs' alleged grievances and their theory of this case means they "cannot be construed to have exhausted" administrative remedies. *See Lowe*, 2018 WL 4222829, at *10 (grievance addressing discontinuation of medication and subsequent harm did not address the subject matter of plaintiff's claims that defendants acted with deliberate indifference to a serious medical need or breached their contract with the state); *Wasanyi v. Aramark Servs., Inc.*, 2024 WL 4472357, at *6–7 (S.D.W. Va. July 2, 2024) (dismissing for failure

18

to exhaust where "there is no factual support the Plaintiff fully and properly grieved the actual issues that give rise" to his claims), *report and recommendation adopted*, 2024 WL 4274700 (S.D.W. Va. Sep. 24, 2024).  Because this mismatch between these Plaintiffs' purported grievances and the subject matter of this case is clear from the face of the Complaint, the Court can and should dismiss their claims for failure to exhaust.

## V.    CONCLUSION

For the reasons stated above, Plaintiffs' Complaint should be dismissed with prejudice, as any amendment would be futile.  *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).

Dated: January 30, 2026

By: */s/ Jeffrey M. Wakefield*

Jeffrey M. Wakefield, Esq. (WV Bar #3894)
Bryan N. Price, Esq. (WV Bar No. 8846)
FLAHERTY SENSABAUGH BONASSO PLLC
200 Capitol Street
Charleston, WV 25301
Phone: 304-345-0200
Facsimile: 304-345-0260
jwakefield@flahertylegal.com
bprice@flahertylegal.com

Laura Flahive Wu (D.C. Bar No. 1024612)*
COVINGTON & BURLING LLP
850 10th Street NW
Washington, DC 20001
Telephone: +1 (202) 662-5892
Facsimile: +1 (202) 778-6000
Email: lflahivewu@cov.com

Cortlin H. Lannin (CA Bar No. 266488)*
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: + 1 (415) 591-7078
Facsimile: + 1 (415) 591-6091
Email: clannin@cov.com

*\* Visiting Attorney*

*Attorneys for Defendants Aramark Corporation, Aramark Correctional Services, LLP, and Union Supply Group*

20

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**CHARLESTON DIVISION**

**ROGER D. SMITH, MARCUS P. MCKINLEY,**
**WILLIAM R. JOHNSON, SANDRA RUSH and**
**JUDY RIGGS, on behalf of themselves and all others**
**Similarly situated,**

       **PLAINTIFFS,**

**v.**                                   **The Honorable Thomas E. Johnson**
                                             **Case No. 2:25-cv-00710**

**ARAMARK CORPORATION, ARAMARK CORRECTIONAL**
**SERVICES, LLC and UNION SUPPLY GROUP,**

       **DEFENDANTS.**

## CERTIFICATE OF SERVICE

I, Jeffrey M. Wakefield, counsel for Defendants, do hereby certify that on the 30th day of

January, 2026, that **_"MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION_**

**_TO DISMISS"_** was served via the CM/ECF filing system.

                                 /s/Jeffrey M. Wakefield
                                 Jeffrey M. Wakefield, Esq. (WV Bar #3894)

21